## SEXTON MFG. CO. et al. v. SINGER SEWING MACH. CO.

(Circuit Court of Appeals, Seventh Circuit. July 27, 1911. Rehearing Denied October 4, 1911.)

No. 1,665.

1. MECHANICS' LIEN (§ 197*)—NOTICE OF CLAIM—SUFFICIENCY.

One purchasing property against which a mechanic's lien is sought may rely on claimant's failure to give notice of his claim as required by statute, though the purchaser took the property after installation of the machines for which a lien is claimed, and after claimant ineffectually attempted to claim a lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 197.*]

2. MECHANICS' LIENS (§ 131*)—NOTICE OF CLAIM—SUFFICIENCY.

Filing a bill in the federal Circuit Court to foreclose a mechanic's lien does not comply with Ill. Act 1903, p. 230 (Hurd's Rev. St. 1905, c. 82) §§ 7, 9, defeating a mechanic's lien as to purchasers, etc., unless within a specified period claimant shall "either bring suit to enforce his lien therefor or shall file with the clerk of the circuit court in the county, a claim for lien," and authorizing suit to enforce the lien to be brought "in any court of competent chancery jurisdiction" in such county.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 184; Dec. Dig. § 131.*]

Grosscup, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Illinois.

Bill by the Singer Sewing Machine Company against the Sexton Manufacturing Company and another. Decree for complainant, and defendants appeal. Reversed, with directions to dismiss.

Frank Y. Gladney (Elmer H. Adams, Dwight S. Bobb, and Asa G. Adams, of counsel), for appellants.

Charles P. Wise and Clarence T. Case, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. [1, 2] On April 23, 1907, appellee filed in the United States Circuit Court at Danville, Vermilion county, Ill., a bill to foreclose an alleged mechanic's lien on real estate in Wayne county, Ill. Notice of lien (or a suit as the equivalent of notice) was never filed in Wayne county. Boggs, who was averred to be owner when the machines were furnished to occupants who had the right to improve the property, filed a disclaimer, in which he alleged that he had quitclaimed to Kreitler, who, in turn, had conveyed to appellants. Thereupon appellants appeared as parties defendant, and set forth, among other defenses, that appellee's filing of the bill herein was not a giving of notice of a claim of lien in compliance with the mechanic's lien statute of Illinois.

Appellants purchased subsequently to the installation of the machines and appellee's attempt to claim a lien. But, a mechanic's lien being purely of statutory origin, a purchaser's knowledge that the contractor had not taken the steps necessary to bind a purchaser could hardly supplant the statute. Von Tobel v. Ostrander, 158 Ill.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

499, 42 N. E. 152; May Brick Co. v. General Eng. Co., 180 Ill. 535, 54 N. E. 638.

Section 7 of the act of 1903 (Laws 1903, p. 230 [Ill. R. S. 1905, Hurd, p. 1319]), in force when the machines were supplied and since, provides that:

"No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within four months after completion * * * he shall either bring suit to enforce his lien therefor or shall file with the clerk of the circuit court in the county in which the building, erection or other improvement is situated, a claim for lien, verified by the affidavit of himself or his agent or employé, which shall consist," etc.

One way to bind the world is to file a "claim for lien" in the office of the clerk of the circuit court in the county where the land lies. An alternative way is to "bring suit." In what county or in what court the suit shall be brought is not defined in this section. If this were all of the statute, it might be said that a suit before a justice of the peace in Sangamon county to foreclose a mechanic's lien on land in Wayne county was intended by the Legislature to be the equivalent of recording a claim for lien in the office of the clerk of the circuit court in Wayne county. But it is agreed section 9 is in pari materia, and therein the provision is that:

"Such contractor may bring suit to enforce his lien by bill or petition in any court of competent chancery jurisdiction in the county where the improvement is located."

If "in the county" defines "jurisdiction," then the bill filed in the United States Circuit Court was the equivalent of a claim of lien recorded in Wayne county; but not if "in the county" defines the "court" in which the bill or petition, as the alternative of a recorded notice, must be filed. Which construction accords with the intention of the Legislature?

In the expression, "any court of competent chancery jurisdiction in the county," the words, "of competent chancery jurisdiction," constitute an adjectival phrase that modifies "court." If for the adjectival phrase adjectives of equal value be substituted, so that the expression becomes "any competent chancery court in the county," the fact that "in the county" qualifies and limits "court" appears indisputable.

Presumptively the Illinois Legislature in using a "court" as a registration office for the filing of notice of mechanics' liens (which could have no existence save through the legislative will) meant Illinois courts, not courts that are foreign to Illinois sovereignty. Even if the Illinois Legislature had the power to use other courts as a part of the machinery for giving a required notice to creditors, incumbrancers, and purchasers, an intention to do so should not be inferred against the natural presumption, unless the language is entirely free from ambiguity. But, so far from the meaning being dubious, the proper grammatical analysis of the language leads to perfect clearness.

An harmonious, rather than an anomalous, registration system should be held to be the object of the Legislature. Respecting con-

veyances, mortgages, leases, tax sales, taxes, assessment liens, and the like, Illinois, in line with other states of our Union, has provided a general registration system by the use of which an intending purchaser of land may acquire knowledge of all interests and liens that are dependent on or derive their existence from Illinois law that may affect his purchase by examining the records in the courthouse of the county where the land lies. Was it the deliberate intention of the Legislature to provide equivalent, alternative methods of giving notice, one of which should accord with the plan adopted in all other instances, and the other of which should be a radical departure? If so, we should think that the legislators would have employed language clearly indicative of such a purpose.

Further, light is afforded by a brief review of Illinois mechanic's lien legislation. In chapter 65 of the Revised Statutes of 1845, sections 1 and 2 gave the right to claim a mechanic's lien. No recordation of a claim of lien was provided for. Notice was given by the filing of a suit (section 3) to be begun "upon bill or petition to the circuit court of the county in which the land lies." But such notice was not to be effective against creditors or incumbrancers (or purchasers, afterward added) unless the suit was instituted within six months after the last payment was due (section 24). In the expression "the circuit court of the county in which the land lies" certainly no ambiguity is lurking.

By reference to the title "Courts" (chapter 29, R. S. 1845), it will be found that the only "court of competent chancery jurisdiction in the county" was the circuit court in the county, held by a justice of the Supreme Court. When the mechanic's lien law of 1845 was revised in 1874 (chapter 82, R. S. 1874), in various counties of the state "courts of competent chancery jurisdiction in the county" had previously been established in addition to the circuit court in the county. So, while the scheme of the statute remained largely the same, identically the same in not providing for a record of a claim of lien and in requiring the only notice to be given by the filing of a bill or petition, the language was changed from "circuit court of the county in which the land lies" to "any court of record of competent jurisdiction in the county in which the land lies" (section 4), the limitation of six months continuing the same (section 28). Obviously the legislative purpose was to broaden the description of the "court in the county" so as to include all courts in the county having the same chancery powers as the circuit court in the county, and not to add United States courts having "jurisdiction in the county" by reason of the fact that the county was within the territory of a United States judicial district then established or thereafter to be established by Congress.

Thus the statute stood till 1887 (Laws 1887, p. 219). By the act of that year section 4 of the act of 1874 was amended to provide that "every contractor who wishes to avail himself of this act shall file with the clerk of the circuit court of the county in which the improvement is situated, a just and true statement," etc. And the limitation in section 28 was shortened to four months. By this act of 1887 the

exclusive method of giving notice by recording a claim of lien was substituted for the old exclusive method of giving notice by filing a bill or petition. From 1887 to 1895 there could be no doubt that an examiner of titles needed not to search for notice beyond the courthouse of the county in which the land was situated.

In 1895 the two methods of giving notice were brought together, and the contractor was given his choice (sections 7 and 9, chapter 82, Starr & Curtis' Ann. St. 1896). Respecting the question of notice, these sections are the same as sections 7 and 9 of the act of 1903, hereinbefore quoted. When to the 1887 method of giving notice to the world the Legislature added an alternative method, the very fact that the two were joined as alternatives ought to lead to a holding that they are of the same nature. And, further, no new method was created. The acts of 1895 and 1903 simply united the old 1887 method and the older 1874 method, which, as we have seen, was a necessary modification of the original provision in the statute of 1845, into which no ambiguity could be injected.

This question has, of course, never been presented to the Supreme Court of the state, for it could not arise in a case begun in any competent chancery court in the county where the improvement is located.

The decree is reversed, with the direction to dismiss the bill for want of equity.

GROSSCUP, Circuit Judge, dissents.